NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
30369
23-JUN-2011
08:46 AM**

NOS. 30369 & 30419

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
JAMES H. PFLUEGER, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 08-1-0280)


MEMORANDUM OPINION
(By: Foley, Presiding J., Fujise and Reifurth, JJ.)


In this consolidated interlocutory appeal, Defendant-Appellant James H. Pflueger (Pflueger or Defendant) appeals from the (1) Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss on Grounds of Double Jeopardy (Double Jeopardy Order) filed on February 8, 2010 and (2) Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss for Insufficiency of the Evidence, or in the Alternative, Due to Vagueness (Insufficiency of Evidence Order) filed on February 3, 2010 in the Circuit Court of the Fifth Circuit[1] (circuit court) in State v. Pflueger, Cr. No. 08-1-0280.

Pflueger filed a Notice of Appeal from the Double Jeopardy Order on March 3, 2010; the appeal was docketed as

---

[1] The Honorable Randal G.B. Valenciano presided.

No. 30369. This interlocutory appeal of the circuit court's Double Jeopardy Order is an immediately appealable collateral order. State v. Minn, 79 Hawai'i 461, 464, 903 P.2d 1282, 1285 (1995) (While the appellate courts in Hawai'i "generally require the trial court's permission before bringing an interlocutory appeal, [the appellate courts] have held that such permission is not necessary where the trial court denies a pretrial motion to dismiss an indictment on double jeopardy grounds.").

On February 17, 2010, Pflueger filed a motion for leave to file an interlocutory appeal from the Insufficiency of Evidence Order and for an extension of time to file the Notice of Appeal. On March 29, 2010, the circuit court granted the motion and certified the Insufficiency of Evidence Order for interlocutory appeal. Pflueger filed a Notice of Appeal from the Insufficiency of Evidence Order on April 1, 2010; the appeal was docketed as No. 30419.[2]

On appeal, Pflueger contends:

(1) In appeal No. 30369, the circuit court's Finding of Fact (FOF) 15 in its Double Jeopardy Order is erroneous because the court found that the conduct for which Pflueger had been convicted in 2003 was limited to the period of time between February 2002 and December 31, 2002 and involved grading on the south side of the Ka Loko[3] Reservoir (Reservoir) on the island of Kauai and was not based on any grading in 1997-98 on the north side of the Reservoir.

(2) In appeal No. 30369, the circuit court's Conclusions of Law (COLs) 4 and 5 in its Double Jeopardy Order are wrong because the conduct for which Pflueger was prosecuted and convicted in 2003 was not "separate" from the conduct at issue in the present prosecution and double jeopardy therefore bars the instant prosecution.

_____

[2] An order to consolidate appeal Nos. 30369 and 30419 was filed on December 22, 2010 by this court.

[3] In the record on appeal, Ka Loko is also referred to as Kaloko and Koloko.

(3)  In appeal No. 30419, the circuit court erred when it held that the grand jury had sufficient evidence to establish probable cause that Pflueger committed the offense of Manslaughter as charged in Counts 1 through 7 of the indictment. In connection therewith, Pflueger argues that in the Insufficiency of Evidence Order, FOF 2 was erroneous and COL 10 was wrong.

(4)  In appeal No. 30419, the circuit court erred in holding that Pflueger did not sustain his burden of showing that as applied in this case, the manslaughter statute is vague.  In connection therewith, Pflueger argues that in the circuit court's Insufficiency of Evidence Order, FOF 3 was erroneous and COLs 11 through 15 were wrong.

## I.  BACKGROUND

On November 21, 2008, a grand jury indicted Pflueger on seven counts of Manslaughter arising out of the March 14, 2006 breach of the Reservoir that caused the deaths of seven people. The Reservoir is on property owned in part by Pflueger and in part by the Mary Lucas Trust, of which Pflueger was a trustee from the 1970s through 2004.  The State of Hawaiʻi (State) alleged that when Pflueger covered or ordered others to cover the Reservoir's emergency spillway in late 1997 or early 1998 and did not uncover it in spite of warnings that it was not safe to leave it covered, he recklessly caused the deaths of the seven people who were in the path of the water when the dam breached.

### A.    1997 Notice of Grading Violation (First Notice)

On October 20, 1997,[4] Portugal and Associates, Inc., on behalf of Pflueger, filed a grubbing permit application to grub[5]

---

[4]  The application is dated October 20, 1997; the County of Kauai Department of Public Works Investigator's Report refers to an application date of October 22, 1997.  Both dates appear to refer to the same application prepared by Portugal and Associates, Inc.

[5]  In a memo to the file, John Buist (Buist), a County civil engineer, explained "that grubbing work is the removal of the root structure of the existing vegetation and that grading was the alteration of the existing ground elevations, which influences natural drainage patterns."

four acres to plant trees in the vicinity of the Reservoir. Because the application did not include grubbing plans, the County of Kauai Department of Public Works (County) did not process the application. The County conducted a field investigation on November 7, 1997 and observed grading/grubbing activity of the hilltop, as well as the presence of two scrapers, three bulldozers, and one excavator. On November 12, 1997, Portugal and Associates, Inc. submitted to the County a supplemental "vicinity map showing area to be grubbed," indicating an area above the Reservoir. On or about November 16, 1997, the County received a citizen's complaint about "grading activity of a hilltop" in the vicinity of the Reservoir. On November 18, 1997, the County issued Pflueger a "Notice of Grading Violation for TMK: 5-1-002:001"[6] (First Notice), alleging "[g]rading in excess of 100 cubic yard [sic] without a permit." The grading in question was on the north side of the Reservoir, where the dam was located. The alleged grading violated Kauai County's Revised Code of Ordinance, Title VIII, Chapter 22, Article 7, "An Ordinance Regulating and Controlling Grading, Grubbing, and Stockpiling and Soil Erosion and Sedimentation within the County of Kauai."

The notice instructed Pflueger that he was to comply with the following:

> 1. Inform your contractor to stop work immediately with the exception of work to correct any hazards to public safety and health.
>
> 2. You are advised to provide temporary and remedial mitigative measures to correct erosion and sedimentation problems that may or have occurred.

Pflueger was given seven days to respond, and he was to remedy the violation by December 19, 1997. However, according to November 19, 2008 grand jury testimony by Wallace Kudo (Kudo), a County civil engineer, the County did not follow up on the notice. There was no further action on this First Notice until

---

[6] TMK (Tax Map Key) 5-1-002:001 (also referred to as TMK 5-1-2-1 or 5-1-02-01) refers to the property on which the Reservoir is located.

the County referred the notice to the County Attorney's Office on May 31, 2002 and the Prosecutor's Office on June 19, 2002.

### B. 2003 Notice of Grading Violation (Second Notice)

On June 21, 2002, following receipt of a complaint of a possible grading violation on Pflueger's Pila'a property, County and State personnel conducted an aerial site inspection of Pflueger's properties.

In Kudo's January 13, 2003 Investigator's Report of the aerial inspection, he wrote: "We observed cleared areas in the vicinity of [the Reservoir] that appeared to be either a grubbing or grading violation. The disturbed area is on the southerly side of the reservoir." (Emphasis added.) The inspection team requested a follow-up onsite inspection.

A field inspection followed on July 3, 2003 to confirm the grading at the south end of the Reservoir. Kudo's Investigator's Report of the field inspection estimated that over 800 cubic yards of earth material had been recently moved from the south side of the Reservoir. It appears that Kudo erroneously thought the First Notice was for grading on the south side of the Reservoir, because in a July 3, 2002 e-mail to his supervisor, Ian Costa (Costa), regarding the field visit, Kudo stated that "[w]e did observe recent grading activity at the [Reservoir] that needs to be permitted. The grading at the [R]eservoir is a continued violation of the . . . 1998 grading violation notice." (Emphasis added.) In a further status report to Costa, Kudo wrote:

> We believe the area was graded and grubbed in 1998. Our initial violation notice is dated November 18, 1997. We have given Pflueger (7) calendar days to correct the grading violation upon receipt of the Second Notice of Grading Violation which is dated July 11, 2002. This violation will be referred to our County Attorney's Office if we do not receive a response.

The County sent Pflueger a "Second Notice of Grading Violation, TMK: 5-1-02-01 Vicinity of [the Reservoir]" (Second Notice) dated July 11, 2002. In the Second Notice, the County stated:

> This is a follow-up to our field investigation on
> July 3, 2002 of the subject property and our notice of
> grading violation dated November 18, 1997, a copy of which
> is enclosed for your information and use. The subject
> violation notice was received on 11/21/01. Although the
> December 19, 1997 deadline has elapsed, we are still waiting
> for your actions to correct the grading violation.

On behalf of the Mary Lucas Trust, Stringer Tusher and Associates, an architectural firm, retained Belt Collins, an engineering firm, to consult about remediation work at the north and south sides of the Reservoir and to respond to the Second Notice. On July 29, 2002, Belt Collins responded to the Second Notice in a letter to the County:

> It is our understanding that the 1997 notice relates
> to grading of the northern slope of the [R]eservoir. We
> understand that this slope has become naturally revegetated
> and will not contribute to future erosion. In July of this
> year, you observed a disturbed area that is not fully
> vegetated. This area is on the south side of the
> [R]eservoir.

(Emphasis added.) Belt Collins stated its intent to implement an Erosion Control Plan and provided a map which clearly marked the "1997 Grading as "Revegetated" on the north side of the Reservoir and the "2001-2002 Grading" on the south side of the Reservoir. Paul Wallrabenstein, a civil engineer formerly employed by Belt Collins, testified before the grand jury that Belt Collins did remediation work on the southern end of the Reservoir and some regrading work on the north side of the Reservoir, but the regrading work was a significant distance from the spillway. Belt Collins' response to the Second Notice affirmatively states that the 1997 grading violation is separate from the 2002 grading violation.

### C. 2003 No Contest Plea

The State filed criminal Complaint CR. No. HC03-33 (District Court Complaint) on February 5, 2003 in the District Court of the Fifth Circuit, Hanalei Division, (district court) charging Pflueger with the offense of grading without a permit:

> During the period of February 2002 through
> December 31, 2002, in the County of Kauai, State of Hawaii,
> JAMES PFLUEGER, intentionally, knowingly, or recklessly, did
> grading in excess of (100) cubic yards of material on any
> one (1) site or did exceed five (5) feet in vertical height

> or depth at its deepest point, on the property identified as Tax Map Key No. 5-1-02-01, without a permit; thereby committing the offense of grading without a permit . . . . Additionally, pursuant to Section 22-7.20(b) of the Kauai County Code, JAMES PFLUEGER did commit a new offense of grading without a permit on each day that he failed to comply with the County of Kauai's, Revised Code of Ordinances, Title VIII, Chapter 22, Article 7, "An Ordinance Regulating and Controlling Grading, Grubbing, Stockpiling and Erosion and Sedimentation within the County of Kauai."

(Emphasis added.)

On March 12, 2003, Pflueger entered a no contest plea to the charge in the District Court Complaint of "Violation of a Grading Ordinance on or about February 1, 2002 in violation of County of Kauai Code Section 22-07."

### D.    2008 Manslaughter Indictment

On November 21, 2008, a grand jury indicted Pflueger on seven counts of Manslaughter, in violation of HRS § 707-702(1)(a) (1993 & Supp. 2002),[7] and one count of Reckless Endangering in the First Degree, pursuant to HRS § 707-713 (1993).[8]

On October 23, 2009, Pflueger filed a Motion to Dismiss on Grounds of Double Jeopardy (Double Jeopardy Motion).  On November 9, 2009, he filed a Motion to Dismiss for Insufficiency of the Evidence or, in the Alternative, Due to Vagueness (Insufficiency of Evidence Motion).

The circuit court heard both motions on January 13, 2010.  On February 3, 2010, the circuit court entered the Insufficiency of Evidence Order, denying Pflueger's motion to dismiss.  On February 8, 2010, the circuit court entered the Double Jeopardy Order, also denying Pflueger's motion to dismiss. Pflueger timely appealed.

---

[7]  HRS § 707-702(1)(a) provides:

> **HRS §707-702    Manslaughter.** (1) A person commits the offense of manslaughter if:
> (a)    He recklessly causes the death of another person[.]

[8]  The circuit court granted Pflueger's motion to dismiss with prejudice Count 8, Reckless Endangering in the First Degree, as barred by the statute of limitations.  The State did not appeal the dismissal.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss based on Double Jeopardy

A motion to dismiss based on double jeopardy is a question of constitutional law reviewed de novo under the right/wrong standard. Whiting v. State, 88 Hawaiʻi 356, 358, 966 P.2d 1082, 1084 (1998). "We review questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case." State v. Rogan, 91 Hawaiʻi 405, 411, 984 P.2d 1231, 1237 (1999) (internal quotation marks and citation omitted).

### B. Findings of Fact and Conclusions of Law

Pretrial findings of fact are reviewed under the clearly erroneous standard. State v. Locquiao, 100 Hawaiʻi 195, 203, 58 P.3d 1242, 1250 (2002). "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." State v. Okumura, 78 Hawaiʻi 383, 392, 894 P.2d 80, 89 (1995) (internal quotation marks and citation omitted). Pretrial conclusions of law are reviewed under the de novo standard. Locquiao, 100 Hawaiʻi at 203, 58 P.3d at 1250 (quoting State v. Harada, 98 Hawaiʻi 18, 22, 41 P.3d 174, 178 (2002)). "A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." Dan v. State, 76 Hawaiʻi 423, 428, 879 P.2d 528, 533 (1994) (internal quotation marks and citation omitted).

### C. Insufficiency of Grand Jury Evidence

[The Hawaiʻi Supreme Court] has previously stated that "[a] motion to dismiss an indictment because of the incompetency of evidence before a grand jury is addressed to the discretion of the trial court. The decision of the trial court will not be reversed unless there has been abuse of such discretion." State v. Corpuz, 67 Haw. 438, 440, 690 P.2d 282, 284 (1984). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the

substantial detriment of a party litigant." *State v. Furutani*, 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994) (citations omitted).

State v. Araki, 82 Hawai'i 474, 481, 923 P.2d 891, 898 (1996).

"A grand jury indictment must be based on probable cause." *State v. Okumura*, 59 Haw. 549, 550, 584 P.2d 117, 119 (1978). Probable cause is established by "a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." *State v. Chung*, 75 Haw. 398, 409-10, 862 P.2d 1063, 1070 (1993). "The evidence to support an indictment need not be sufficient to support a conviction." *State v. Ganal*, 81 Hawai'i 358, 367, 917 P.2d 370, 379 (1996). "In reviewing the sufficiency of the evidence to establish probable cause before the grand jury, 'every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment and neither the trial court nor the appellate court on review may substitute its judgment as to the weight of the evidence for [that of] the Grand Jury.'" *Id.* (quoting *State v. Kuba*, 68 Haw. 184, 191, 706 P.2d 1305, 1310-11 (1985)).

State v. Ontai, 84 Hawai'i 56, 63, 929 P.2d 69, 76 (1996).

### D.   Vagueness of the Manslaughter Statute as Applied

Due process of law requires that a penal statute state with reasonable clarity the act it proscribes and provide fixed standards for adjudging guilt, or the statute is void for vagueness. Statutes must give the person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may choose between lawful and unlawful conduct.

State v. Tripp, 71 Haw. 479, 482, 795 P.2d 280, 282 (1990) (citations omitted). "Interpretation of a statute is a question of law which we review de novo." Kikuchi v. Brown, 110 Hawai'i 204, 207, 130 P.3d 1069, 1072 (App. 2006) (internal quotation marks and citation omitted).

### III.   DISCUSSION

### A.   PFLUEGER IS NOT PROTECTED UNDER DOUBLE JEOPARDY FOR THE 2008 MANSLAUGHTER CHARGE.

Pflueger contends in appeal No. 30369 that the circuit court should have granted his Double Jeopardy Motion because the evidence showed that the conduct he was convicted of in 2003 was a continuing violation of the 1997-98 grading violation and therefore the 2008 Manslaughter charges constituted the "same conduct." State v. Feliciano, 107 Hawai'i 469, 477, 115 P.3d

648, 656 (2005). Specifically, Pflueger contends that FOF 15 is erroneous and COLs 4 and 5 are wrong.

FOF 15 provides:

> 15. The conduct that formed the basis of the 2003 conviction was illegal grading that occurred in 2002 on the south side of the [R]eservoir, and was not based on any grading in 1997-98 on the north side of the [R]eservoir, involving the spillway.

COLs 4 and 5 provide, in part:

> 4. Under the "same conduct" test, the State does not violate the double jeopardy clause under the State Constitution in the prosecution of the instant case. In the Kauai County's prosecution in 2003, the [District Court Complaint] in Cr. No. HC03-33, to which [Pflueger] pled no contest, clearly specifies the time frame as "During the period of February 2002 through December 31, 2002" and was based entirely on grading that was done in 2002 on the southerly side of the [Reservoir].

> 5. In the instant case, there are acts, which include the allegation that sometime in late 1997 through early 1998, [Pflueger] filled/covered the spillway and/or ordered or otherwise caused others to fill/cover the spillway, that are the focus of this prosecution. As much as these acts are outside that time frame of Cr. No. HC03-33, [Pflueger] has not been subjected to double jeopardy based on the instant prosecution, even if the same conduct test could ever bar a manslaughter prosecution for deaths that occurred in 2006, based on a 2003 illegal grading conviction (a question the court need not reach here, as even if such a bar were possible, the 1997-98 grading was not the subject of the 2003 conviction). Furthermore, the alleged filling/covering of the spillway was done on the northern side of the [Reservoir] while the grading that occurred in 2002, which was the subject of the 2003 conviction, took place on the southern side. Therefore, the 2003 prosecution and instant prosecution involve separate acts and [Pflueger] has not been subjected to double jeopardy as the two prosecutions involved different conducts under the "same conduct test" (even were that test applicable to a manslaughter prosecution for deaths that occurred in 2006, based on a 2003 illegal grading conviction).

**1. Protection under Double Jeopardy Clause**

The United States and Hawaiʻi Constitutions protect persons against being tried twice for the same offense. The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides in relevant part: "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." Likewise, Article 1, section 10 of the Hawaiʻi Constitution

provides, in relevant part:  "No person shall be . . . subject for the same offense to be twice put in jeopardy[.]"

The purpose behind barring multiple prosecutions for the same offense is to prevent the state, with all its resources and power, from subjecting an individual to the embarrassment, expense, and ordeal of another trial and forcing the person to live in a continuous state of anxiety and insecurity.  State v. Kalaola, 124 Hawai'i 43, 51-52, 237 P.3d 1109, 1117-18 (2010) (citing to Green v. United States, 355 U.S. 184, 187-88, 78 S. Ct. 221, 223 (1957)).  The double jeopardy clause is intended to ensure "that individuals are not subjected to multiple prosecutions for a single act."  State v. Lessary, 75 Haw. 446, 457, 865 P.2d 150, 155 (1994) (emphasis added).

Courts have applied double jeopardy protection to three types of situations:  (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense."  Id. at 454, 865 P.2d at 154 (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969)).  The present case is focused on protection against "a second prosecution for the same offense after conviction," where Pflueger pled no contest in 2003 to charges of illegal grading. "There is a conviction if the prosecution resulted in . . . a plea of . . . nolo contendere accepted by the court."  HRS § 701-110(3) (1993).

The Hawai'i Supreme Court has held that the Hawai'i Constitution's double jeopardy clause provides greater protections against multiple prosecutions for the same conduct than is provided by the United States Constitution.  Lessary, 75 Haw. at 461, 865 P.2d at 157.  To provide that protection, our supreme Court adopted the "same conduct" test set out in Grady v. Corbin, 495 U.S. 508, 521, 110 S. Ct. 2084, 2093 (1990)[9]:  "[T]he

_____

[9]  Although Grady was overruled by United States v. Dixon, 509 U.S. 688, 113 S. Ct. 2849 (1993), in which the United States Supreme Court reestablished
(continued...)

Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Lessary, 75 Haw. at 457-58, 865 P.2d at 155.

In adopting the "same conduct" test, the Hawai'i Supreme Court stated:

> The double jeopardy clause of the Hawai'i Constitution prohibits the State from pursuing multiple prosecutions of an individual for the same conduct. Prosecutions are for the same conduct if any act of the defendant is alleged to constitute all or part of the conduct elements of the offenses charged in the respective prosecutions.

Id. at 461, 865 P.2d at 157.

While the "same conduct" test protects a person from multiple prosecutions for the same act, it does not "unnecessarily restrict[] the ability of the State to prosecute individuals who perform separate acts that independently constitute separate offenses." Id. at 459, 865 P.2d at 156.

The State charged Lessary with Abuse of a Family or Household Member, Unlawful Imprisonment in the First Degree, and Terroristic Threatening in the First Degree. Id. at 447-48, 865 P.2d at 151-52. Lessary allegedly drove to his estranged wife's place of work, went into her office, grabbed her by her head and hair, threw her against a wall, threatened her and a co-worker with a pair of scissors, dragged her out to his car, and threatened her with the scissors again to force her into the car. Id. at 448-49, 865 P.2d at 152.

Lessary pled no contest to Abuse of a Family or Household Member, and the question facing the supreme court was whether double jeopardy protected him from being prosecuted for the other two charges. Id. at 448-50, 865 P.2d at 151-52. The State conceded that the "same conduct" test barred prosecution of

_____

[9](...continued)
the "same elements" test as the sole protection against double jeopardy, the Hawai'i Supreme Court in Lessary declined to follow Dixon. Lessary, 75 Haw. 451 n.6, 452, & 457, 8965 P.2d 153 n.6, 153, & 155.

the unlawful imprisonment charge, id. at 460, 865 P.2d at 156, so the only issue remaining was to apply the "same conduct" test to determine if the conduct element of the terroristic threatening charge was proved by acts independent of the acts used to prove the conduct element in the abuse charge. Id. at 460-61, 865 P.2d at 157.

The Abuse of a Family or Household Member conduct element is "physically abusing a family or household member." Id. at 460, 865 P.2d at 157. The State used the acts of throwing the victim against the wall and dragging her out to the car to prove the abuse conduct element. Id. The terroristic threatening conduct element is "threatening to cause bodily injury to another person." Id. at 460-61, 865 P.2d at 157. The State indicated it would use Lessary's brandishing the scissors at the victim to prove the conduct element. Id. at 461, 865 P.2d at 157.

Because the act used to prove the terroristic threatening conduct element (brandishing the scissors) was not the same as the acts used to prove the Abuse of a Family or Household Member conduct element (throwing victim against wall and dragging victim to car), the supreme court held that the two offenses were not based on the "same conduct" and, therefore, Lesssary was not protected under the double jeopardy clause. Id. at 461, 865 P.2d at 157.

The supreme court also rejected Lessary's argument that "because the alleged threats were so closely intertwined with the acts of abuse, they constituted the 'same conduct.'" Id. Lessary was, in essence, arguing for the supreme court to apply the "same episode" test, which is based on "whether the alleged conduct was so closely related in time, place, and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." Id. As explained by the supreme court, "the Hawai'i Constitution does not require application of the 'same episode' test." Id.

2.    Application of "same conduct" test to the instant case

We apply the "same conduct" test set forth in Lessary and Grady to the instant case.  Under the "same conduct" test, prosecution of the 2008 Manslaughter charge is barred by double jeopardy if the acts for which Pflueger was prosecuted in 2003 are the same acts that will be used to prove the 2008 charge.

The conduct elements of grading without a permit, as stated in the District Court Complaint, were that Pflueger, during the period of February 2002 through December 31, 2002 on the property identified as Tax Map Key No. 5-1-02-01:  (1) intentionally, knowingly, or recklessly (2) did grading in excess of one hundred cubic yards of material on any one site or in excess of five feet in vertical height or depth at its deepest point (3) without a permit.

The conduct elements of Manslaughter are that a person (1) recklessly (2) causes the death (3) of another person.  HRS § 707-702(1)(a).  The State contended that it would rely on acts different from those used to prove the conduct element of the 2003 conviction to prove the conduct elements of Manslaughter.

(a)    2003 No Contest Plea to the District Court Complaint

The State filed the District Court Complaint on February 5, 2003, charging Pflueger with the petty misdemeanor offense of grading without a permit between February and December 31, 2002.  Pflueger's March 12, 2003 no contest plea to "Violation of a Grading Ordinance on or about February 1, 2002 in violation of County of Kauai Code Section 22-07" indicates that the act of grading without a permit was used to prove the conduct element of the District Court Complaint.  Also, the record indicates, and Pflueger concedes in his opening brief in appeal No. 30369, that the 2002 illegal grading was conducted on the southern end of the Reservoir while the 1997 illegal grading was conducted on the northern side.

Pflueger argues, notwithstanding the evidence that the 2003 conviction was for illegal grading in 2002, that the "same conduct" test "requires a court to consider all potentially relevant sources of information in identifying the conduct at issue in a prior prosecution." He suggests that Lessary supports this conclusion because the Hawaiʻi Supreme Court looked outside the complaint to the transcript of the trial court. He also cites to Grady for the same proposition, noting that the United States Supreme Court based its analysis on conduct alleged in the state's bill of particulars. Finally, he cites to cases from other circuits to support the argument that, based on Grady, the court must look to the "entirety of the conduct," United States v. Uselton, 927 F.2d 905, 909 (6th Cir. 1991), for which Pflueger was convicted in the 2003 case.

We agree with Pflueger that the circuit court is not prohibited from, and in fact must, look to the "entirety of the conduct" that was considered as the basis for the first conviction. But we also conclude the circuit court carried out such a review. The circuit court's FOFs 1 through 14 in its Double Jeopardy Order are replete with information from sources other than the District Court Complaint regarding the conduct and acts leading up to the 2003 charges. The circuit court considered that information and found in FOF 15 that "[t]he conduct that formed the basis of the 2003 conviction was illegal grading that occurred in 2002 on the south side of the [R]eservoir, and was not based on any grading in 1997-98 on the north side of the [R]eservoir, involving the spillway."

### (b) 2008 Manslaughter Indictment

On November 21, 2008, a grand jury indicted Pflueger on seven counts of Manslaughter, pursuant to HRS § 707-702(1)(a). In the State's Bill of Particulars, filed October 16, 2009, the State contended that Pflueger was reckless when he "covered the [Reservoir]/Kaloko Dam emergency spillway and/or caused it to be covered; he left it covered and did not uncover it or cause it to be uncovered despite warnings and/or requests that he should do

so; he increased the water level in the Reservoir and caused the water level to be increased" and this conduct caused the deaths of seven people.

The alleged illegal act of covering the spillway in 1997-98 and not subsequently uncovering it is not the same act as illegally grading another section of the property sometime between February and December 2002. The act of modifying the water systems is also not the same act of illegal grading that constituted the 2003 conviction. Hence, the acts the State intends to use to prove the conduct element of the Manslaughter charges are separate from the act used to prove the conduct element of the 2003 conviction, and double jeopardy is not invoked.

Finally, we note that the double jeopardy clause is generally invoked in cases where all the elements of the offenses have been committed at the time of the first prosecution. In such cases, the purpose behind the double jeopardy clause is clear:

> One of the central objectives of the double jeopardy prohibition against successive trials is to prevent the state, with its unlimited resources, from using the first trial in the appellate process to pinpoint the inadequacies of its case. The double jeopardy clause forbids a second trial for the purpose of affording the prosecution "another opportunity to supply evidence that it failed to muster in the first trial."
>
> [*Mars v. Mounts*, 895 F.2d 1348, 1359 (11th Cir. 1990)] (citation omitted).

Cueto v. Singletary, 790 F. Supp. 1120, 1129 (M.D. FL 1991); see also Burks v. United States, 437 U.S. 1, 11, 98 S. Ct. 2141, 2147 (1978), declined to follow on other state law grounds by State v. Maldonado, 108 Hawaiʻi 436, 121 P.3d 901 (2005) (Double jeopardy protects a person "from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." (Internal quotation marks and citation omitted.))

In the instant case, there is no danger that the State, in 2003, was using that illegal grading prosecution to pinpoint

16

inadequacies in preparation for its 2008 Manslaughter case because in 2003, the dam had not been breached and there had been no deaths.

B. THERE WAS SUFFICIENT EVIDENCE BEFORE THE GRAND JURY TO ESTABLISH PROBABLE CAUSE THAT PFLUEGER COMMITTED THE OFFENSE OF MANSLAUGHTER

Pflueger contends the circuit court erred when it found in FOF 2 and concluded in COL 10 of its Insufficiency of Evidence Order (the same language appears in both paragraphs) that "[t]here is sufficient evidence to support the grand jury's finding of probable cause for the offense of Manslaughter as charged in Counts 1 through 7 of the Indictment and Reckless Endangering in the First Degree as charged in Count 8 of the Indictment."

The grand jury's duty is to determine whether there is probable cause that a crime has been committed and criminal proceedings should begin. State v. Bell, 60 Haw. 241, 243, 589 P.2d 517, 519 (1978), overruled on other grounds by State v. Chong, 86 Hawai‘i 282, 949 P.2d 122 (1997). The grand jury also has the duty to protect an individual from unwarranted prosecution. Chong, 86 Hawai‘i at 289, 949 P.2d at 129 (quoting Bell, 60 Haw. at 256-57, 589 P.2d at 526 (Kidwell, J., concurring)). The grand jury proceeding is not meant to be a mini-trial; the adversarial nature of a trial "is more properly reserved for the actual trial phase of prosecution." State v. O'Daniel, 62 Haw. 518, 520, 616 P.2d 1383, 1386 (1980) (quoting Bell, 60 Haw. at 244, 589 P.2d at 519). The grand jury does not weigh the evidence or strength of the case. "The function of a grand jury . . . does not entail a duty to weigh the prosecution's case against that of the defense, or even to determine that the prosecution's case is supported by competent evidence." Chong, 86 Hawai‘i at 289, 949 P.2d at 129 (quoting Bell, 60 Haw. at 256-57, 589 P.2d at 526 (Kidwell, J., concurring)).

17

Pflueger incorrectly asserts that the circuit court's ruling on sufficiency of the evidence is a question of law reviewed de novo. Pflueger confuses sufficiency of the evidence, reviewed for abuse of discretion, Araki, 82 Hawai'i at 481, 923 P.2d at 898, with sufficiency of the indictment, reviewed de novo as a question of law. State v. Moore, 82 Hawai'i 202, 215, 921 P.2d 122, 135 (1996).

In determining the sufficiency of the evidence, the Hawai'i Supreme Court has held that "a motion to dismiss an indictment because of the incompetency of evidence before a grand jury is addressed to the discretion of the trial court." Araki, 82 Hawai'i at 481, 923 P.2d at 898 (internal quotation marks, citation, and brackets omitted).

In reviewing for sufficiency of the evidence, a court determines whether "sufficient legal and competent evidence" has been presented to the grand jury to establish "probable cause that a suspect has violated the law." State v. Kuba, 68 Haw. 184, 190-91, 706 P.2d 1305, 1310 (1985). "Probable cause is established by a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." Ontai, 84 Hawai'i at 63, 929 P.2d at 76 (internal quotation marks and citation omitted). Probable cause does not require the presentation of evidence that proves a defendant's guilt.

> Suspicion is not proof. Hence, to sustain an indictment, it is not necessary to establish guilt beyond a reasonable doubt, by clear and convincing evidence or even by a preponderance of the evidence. It is not necessary to establish guilt at all. It is merely necessary to establish a situation where a strong suspicion of guilt would be believed and conscientiously entertained by a man of ordinary caution or prudence.

State v. Freedle, 1 Haw. App. 396, 400, 620 P.2d 740, 743 (1980).

The evidence required to support an indictment may be less than the evidence required to support a conviction, State v. Ganal, 81 Hawai'i 358, 367, 917 P.2d 370, 379 (1996), but the State still must produce "at least some evidence" of any "material element of the offense." Ontai, 84 Hawai'i at 64,

18

929 P.2d at 77.  Pflueger contends that "none of the evidence presented in purported support of [the] allegations establishes a 'strong suspicion'" that he "knew of and disregarded a substantial and unjustifiable risk that the decedents' deaths (or anyone else's) would result."  He argues that there was an "absence of evidence to establish the required mens rea [of recklessness]" and, therefore, the grand jury's finding of probable cause is unwarranted.

"A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result." HRS § 702-206(3)(c) (1993).  The State presented four days of testimony before the grand jury, producing 20 witnesses and 207 exhibits and creating a record of 607 pages.  This testimony attempted to show, in part, that Pflueger knew of and disregarded a substantial and unjustifiable risk that he was putting people's lives at risk when he covered the spillway -- the Reservoir's only emergency system to alleviate the pressure of too much water in the Reservoir.

Because it is rarely possible to prove a defendant's state of mind by direct evidence, "the mind of an alleged offender may be read from his or her acts or conduct and the inferences fairly drawn from all of the circumstances."  State v. Pudiquet, 82 Hawai'i 419, 425, 922 P.2d 1032, 1038 (App. 1996) (internal quotation marks and citation omitted).  Thus, there need not be direct evidence to create the "strong suspicion" that Pflueger was reckless.  The grand jury can infer this "strong suspicion" of guilt from the testimony presented, determining that there is at least "some evidence," even by inference, to sustain its finding of probable cause.

The State presented evidence of a fax sent from Michael Dyer, a realtor with Kilauea Management Co., to Pflueger on June 4, 1998.  The fax read:

> It looks to me as if the Ka Loko spillway is covered
> with 8 to 10 feet of new fill.  The reservoir is about 1 to
> 2 feet above the old full level.  It would probably take at

19

least several months for Ka Loko to fill to the new level.
Then I think water will flow over a broad area in the middle
of your earth dam . . . just an eyeball guess.

I suggest you consider digging back down to the old
concrete spillway, setting a small culvert on the spillway
and then backfilling it to your current level.  You would
probably also need to cut a new overflow ditch to the valley
below your dam.

The grand jury also heard testimony from Thomas Hitch
(Hitch),[10] the owner of Kilauea Irrigation Co., as read by Agent
Lau, a Special Agent for the Department of the Attorney General.
Hitch had testified that the portion of the road that crossed
the spillway was concrete, making it very noticeable.  He
explained that the spillway was the "only safety valve over the
entire reservoir . . . that's what dam construction is all about.
It's common sense."  Hitch had spoken with Pflueger in early 1998
after he saw that the spillway had been covered:  "I said, Jimmy,
you can't -- you know, you can't fill in the spillway.  It's our
only safety factor.  And he said, Hey, mind your own business,
Hitch.  It's my reservoir and I'll do what I want."

The State presented evidence to the grand jury that
proved people lived, worked and traveled on the land downstream
from the dam.  The State submitted aerial photographs taken in
2006 showing homes located near the flood path and photographs
taken in 2006 showing Kuhio Highway in the downstream path of the
dam.  The State presented evidence that Pflueger was aware that a
pipeline diverted water from the Reservoir to downstream users
and evidence that water from the Reservoir was used by farmers
downstream.  The State also presented evidence that the Reservoir
contained 370 million gallons of water when it breached.

In reviewing the evidence before the grand jury, "every
legitimate inference that may be drawn from the evidence must be
drawn in favor of the indictment and neither the trial court nor
the appellate court on review may substitute its judgment as to
the weight of the evidence for that of the Grand Jury."  Araki,

---

[10]  At the time of the grand jury hearing, Hitch was in southeast Asia.

82 Hawaiʻi at 482, 923 P.2d at 899 (emphasis omitted) (quoting Kuba, 68 Haw. at 191, 706 P.2d at 1310-11).

Looking at the evidence in the light most favorable to the State, we conclude the State presented evidence to the grand jury that would, either through direct evidence or by inference, "lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused," Ontai, 84 Hawaiʻi at 63, 929 P.2d at 76; specifically, that Pflueger acted with a conscious disregard of a substantial and unjustifiable risk that death could result. The circuit court did not abuse its discretion when it found that there was "sufficient evidence to support the grand jury's finding of probable cause for the offense of Manslaughter."

**C. THE CIRCUIT COURT DID NOT ERR IN FINDING PFLUEGER DID NOT SUSTAIN HIS BURDEN OF SHOWING THAT THE MANSLAUGHTER STATUTE WAS VAGUE AS APPLIED.**

Pflueger contends, in the alternative, that the Manslaughter statute, HRS § 707-702(1)(a), is unconstitutionally vague as applied. He argues the Insufficiency of Evidence Order FOF 3 is erroneous and COLs 11 through 15 are wrong.

FOF 3 provides:

> 3. The Manslaughter statute ([HRS] § 707-702) and the Reckless Endangering in the First Degree statute ([HRS] § 707-713) are sufficiently definite and provide adequate notice to the Defendant of the conduct prohibited by them and of the crimes with which he is charged. Both statutes provide persons of ordinary intelligence an adequate description of the prohibited conduct and notice of how to avoid committing illegal acts.

COLs 11 through 15 provide:

> 11. Statutory enactments are presumptively constitutional. *Doe v. Doe*, 116 [Hawaiʻi] 323, 172 P.3d 1067 (2007).
>
> 12. A party claiming a statute is unconstitutional "has the burden of showing unconstitutionality beyond a reasonable doubt." *State v. Mallan*, 86 [Hawaiʻi] 440, 950 P.2d 178 (1998).
>
> 13. A criminal statute must "state with reasonable clarity the act it proscribes" and "provide fixed standards for adjudging guilt." In other words, it must provide a person of ordinary intelligence a reasonable opportunity to

21

know what conduct is prohibited. *State v. Tripp*, 71 [Hawaiʻi] 479, 795 P.2d 280 (1990).

> 14. A criminal statute is unconstitutionally vague "if a person of ordinary intelligence cannot obtain an adequate description of the prohibited conduct or how to avoid committing illegal acts." *State v. Bui*, 104 [Hawaiʻi] 462, 92 P.3d 471 (2004).

> 15. Defendant has not sustained his burden of showing the Manslaughter or Reckless Endangering in the First Degree statutes are unconstitutional beyond a reasonable doubt, and the Court finds both are constitutional.

The Hawaiʻi Supreme Court has addressed vagueness challenges by applying the following principle:

> A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, . . . [b]ut . . . most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government <u>inevitably limit the specificity with which legislators can spell out prohibitions</u>. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.

<u>State v. Kalani</u>, 108 Hawaiʻi 279, 287, 118 P.3d 1222, 1230 (2005) (emphasis in original omitted) (quoting <u>State v. Marley</u>, 54 Haw. 450, 460, 509 P.2d 1095, 1103 (1973)). "[W]here possible, we will read a penal statute in such a manner as to preserve its constitutionality." <u>State v. Richie</u>, 88 Hawaiʻi 19, 31, 960 P.2d 1227, 1239 (1998) (quoting <u>State v. Bates</u>, 84 Hawaiʻi 211, 220, 933 P.2d 48, 57 (1997)).

The Hawaiʻi Supreme Court has long held that

> "(1) legislative enactments are presumptively constitutional; (2) a party challenging a statutory scheme has the burden of showing unconstitutionality beyond a reasonable doubt; and (3) the constitutional defect must be clear, manifest, and unmistakable." *State Organization of Police Officers (SHOPO) v. Society of Professional Journalists-University of Hawaiʻi Chapter*, 83 Hawaiʻi 378, 389, 927 P.2d 386, 397 (1996) (citing *Pray v. Judicial Selection Comm'n*, 75 Haw. 333, 340, 861 P.2d 723, 727 (1993)). *See also* [*State v. Kam*, 69 Haw. 483, 496, 748 P.2d 372, 380 (1988); *State v. Mueller*, 66 Haw. 616, 626-27, 671 P.2d 1351, 1358 (1983)].

<u>State v. Mallan</u>, 86 Hawaiʻi 440, 446, 950 P.2d 178, 184 (1998).

Pflueger argues that his burden of proof to show unconstitutionality beyond a reasonable doubt does not apply to vagueness challenges. He contends that Mallan, which the circuit court cited to in COL 12, is inapplicable because Mallan involved the right to privacy, not vagueness of a statute. In Mallan, the appellant argued that he had a constitutional right to possess marijuana and the statute criminalizing his possession of marijuana violated his rights. Id. at 443 & 445, 950 P.2d at 181 & 183. The supreme court clearly stated that statutes are presumed constitutional and "the party attacking the statute must show with convincing clarity that the statute is unconstitutional." Id. at 466, 950 P.2d at 204. When a party challenges the constitutionality of a statute, on whatever grounds, it remains the party's burden to overcome the presumption of constitutionality.

Pflueger also maintains that State v. Kam, 69 Haw. 483, 748 P.2d 372 (1988), supports his argument that it is not his burden to prove unconstitutionality of a statute beyond a reasonable doubt. Again, he misinterprets the supreme court's analysis. In Kam, the supreme court reiterates the principle that statutes are presumptively constitutional and the burden is on the party challenging the statute to show the alleged unconstitutionality beyond a reasonable doubt. Id. at 496, 748 P.2d at 380. The court addresses the vagueness issue and finds that the statute in question is not vague. Id. at 488, 748 P.2d at 375. Nowhere does the court suggest that a different burden of proof was applied. Notwithstanding his argument, Pflueger has the burden of proof to show that the Manslaughter statute is unconstitutionally vague.

Pflueger also contends that because there was no prior case law citing facts similar to his case, he therefore lacked notice that the Manslaughter statute could apply to his alleged reckless conduct. However, he cites to no case law to support his contention.

Pflueger also argues that because all reported Hawaiʻi Manslaughter cases involved situations where the culpable action of the defendant occurred almost simultaneously with the fatal result of the victim's death, the law requires that the death happen contemporaneously to the culpable action by the defendant. He cites to no Hawaiʻi case law to support a requirement that the Manslaughter statute is restricted to cases where the death occurs contemporaneously with the culpable action. He does cite to a Texas case, Collins v. State, 890 S.W.2d 893 (Tex. Ct. App. 1994); however, this case does not support his contention that the Hawaiʻi Manslaughter statute is void for vagueness as applied. In Collins, the mother ingested drugs during pregnancy, resulting in prenatal injury to the fetus that became apparent after the child's birth. Id. at 895. The state charged the mother with reckless injury to a child. Id. The Texas appellate court held that the mother's harmful conduct with respect to the fetus was not criminal conduct at the time she ingested the drugs because the child injury statute was limited to conduct against a person who has been born and is alive. Id. at 897-98. Because there was nothing in the Texas statute to give the mother notice that her prenatal conduct would violate the child injury statute if her conduct resulted in painful withdrawal symptoms by the child after birth, the court held that the statute was "impermissibly vague as applied to [the mother's] conduct." Id. at 898.

In the instant case, the Manslaughter statute puts one on notice that it is a violation of the statute to commit any conduct in conscious disregard of the substantial risk of another person's death. The statute is not void for vagueness.

## IV. CONCLUSION

The Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss on Grounds of Double Jeopardy filed on February 8, 2010 and the Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss for Insufficiency of the Evidence, or in the Alternative,

24

Due to Vagueness filed on February 3, 2010 in the Circuit Court of the Fifth Circuit in <u>State v. Pflueger</u>, Cr. No. 08-1-0280, are affirmed.

DATED:  Honolulu, Hawaiʻi, June 23, 2011.

William C. McCorriston
(David J. Minkin and
Becky T. Chestnut with him
on the briefs)
(McCorriston Miller Mukai
MacKinnon LLP)
for Defendant-Appellant.

Mark J. Bennett,
Special Deputy Attorney General
(Girard D. Lau and Kimberly
Tsumoto Guidry, Deputy Attorneys
General, with him on the briefs)
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge